# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| BRANDON A. COMPTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-683-HSM-DCP |
| | ) | |
| DAVID SEXTON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Brandon A. Compton, a Tennessee inmate proceeding *pro se*, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee convictions for second-degree murder and resulting 50-year sentence. Having considered the submissions of the parties, the State-court record, and the law applicable to Compton's claims, the Court finds that the petition should be denied.

## I.   SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

On June 13, 2003, Kellan Shown arranged to purchase marijuana from Brandon Compton at the home of Timothy Williams, who was living in the residence with two couples, the Lindseys and Talbots, and their families. *State v. Compton*, No. E2005-01419-CCA-R3-CD, 2006 WL 2924992, at *1 (Tenn. Crim. App. Oct. 13, 2006) ("*Compton I*"), *perm. app. denied* (Tenn. Feb. 26, 2007). On the night of the drug sale, many of these individuals, including young children, were present at the home. *Id*.

Shown, along with Clayton Hall, arrived at the home and purchased marijuana from Compton for $1,000. *Id*. Compton quickly discovered the funds were counterfeit and demanded return of the drugs, but Shown and Hall proceeded to the door of the home with the marijuana. *Id*.

Compton followed the pair down the hall, trailed by Williams and Mr. Lindsey, who saw Compton fire his gun at Shown and Hall. *Id.* At least four shots were heard, and Mr. Lindsey heard Compton say, "That's what you get for stealing my weed." *Id.* Compton picked up the marijuana and fled the home. *Id.* The victims' bodies were dragged outside, and the police were called. *Id.*

Upon arrival, police officers discovered four shell casings in the area where the shooting occurred, along with a bullet in the living room that had gone through a wall. *Id.* at *2. A fifth shell casing was later found in a plant. *Id.* No weapons were recovered at the scene. *Id.* Two bullets were recovered from each victim during an autopsy. *Id.*

Compton was indicted by a Knox County Grand Jury for two counts of first-degree premeditated murder for the deaths of Kellan Shown and Clayton Hall [Doc. 22-1 p. 6-7]. Petitioner testified on his own behalf, claiming that he fired his gun in self-defense after Hall first fired at him. *Compton I*, 2006 WL 2924992, at *2. Following a jury trial, Compton was convicted as charged, and the trial court imposed two consecutive sentences of life imprisonment [Doc. 22-7 p. 102; Doc. 22-8 p. 24-26; Doc. 22-2 p. 78-79].

On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") vacated the judgments of conviction for first-degree murder, entered convictions for second-degree murder, and remanded the case to the trial court for resentencing. *Compton I*, 2006 WL 2924992, at *2-8. The Tennessee Supreme Court declined discretionary review [Doc. 22-17].

On remand, the trial court found that, pursuant to Tenn. Code Ann. § 40-35-114, the following enhancement factors were applicable: Compton had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; he had no hesitation about committing a crime when the risk to human life was high; he was released on probation at the time the offense was committed; and he failed to comply with the

conditions of a sentence involving release into the community [Doc. 22-19 p. 40-43].[1]  The trial

court imposed a 25-year sentence for each conviction and aligned the sentences consecutively, for

an effective sentence of 50 years [*Id*. at 44; *see also* Doc. No. 22-18 p. 23-24].

On appeal, the TCCA affirmed the sentences.  *State v. Compton*, No. E2007-01790-CCA-

R3-CD, 2008 WL 4071825, at *4-8 (Tenn. Crim. App. Sept. 2, 2008) ("*Compton II*"), *perm. app.*

*denied* (Tenn. Feb. 17, 2009).  The Tennessee Supreme Court declined discretionary review [Doc.

22-26].

Thereafter, Compton timely filed a pro se petition for post-conviction review [Doc. 22-27

p. 5-15].  The post-conviction court appointed counsel, who filed an amended petition [*Id*. at 27-

28, 30-33].  Compton then filed a motion to remove counsel, which the post-conviction court

granted [*Id*. at 37-40, 41].  The post-conviction court subsequently appointed new counsel [*Id*. at

42].

An evidentiary hearing was held where Compton and his trial counsel, Robert Kurtz,

testified [Doc. 22-28 p. 5-104; Doc. 22-29 p. 3-61].  When questioned about the investigative

efforts made by Kurtz, Compton recalled meeting with a man, perhaps named "Michael Cohan,"

and an unidentified woman who asked him questions about the case, but neither person testified at

trial. [Doc. 22-28 p. 16].  Compton stated that trial counsel did not discuss with him any reports

that these persons created [*Id*. at 17].

Trial counsel Kurtz stated that he used Michael Cohan, a former Knox County police

officer, as an investigator for Compton's case [*Id*. at 98].  Kurtz stated that he and Cohan

---

[1] The trial court also mentioned two other enhancement factors – that the offense
involved more than one victim, and that the defendant possessed or employed a firearm in
the commission of the offense – but as the TCCA noted, it is not clear that the trial court actually
applied those enhancement factors in sentencing [Doc. 22-19 p. 40-43].  *See also* Tenn. Code
Ann. § 40-35-114 (4), (10).

interviewed the witnesses listed on the indictment and any witnesses discovered through other sources [*Id*.]. If trial counsel did not personally attend an interview, he received and reviewed a memo summarizing the interview [*Id*. at 98-99]. Trial counsel agreed that he did not interview several police officers listed on the indictment [Doc. 23-29 p. 15-24]. Trial counsel explained that he was not able to contact Mr. Lindsey but stated that he reviewed Mr. Lindsey's testimony from the preliminary hearing [*Id*.]. He stated that he also did not interview several other witnesses, but rather, relied on their prior statements [*Id*.].

Compton testified that trial counsel failed to adequately investigate the possibility of calling Chris Galloway as a witness [Doc. 22-28 p. 12-13]. However, trial counsel testified that he contacted Galloway, who briefly spoke with trial counsel and told counsel he would not speak to him further without the State's attorney being present [*Id*. at 104; Doc. 22-29 p. 3]. Galloway also told trial counsel he believed his testimony would be harmful to the defense [*Id*.].

Compton testified that trial counsel should have called a witness to testify that, during a drug transaction, the buyer was likely to be armed [Doc. 22-28 p. 22]. Compton admitted that he never spoke to trial counsel about such a witness, but he stated that he believed that such a witness was necessary [*Id*.]. He also faulted counsel for failing to put on proof that Compton had a lawful source of income in addition to selling drugs [*Id*. at 24]. Trial counsel testified that he never considered introducing Compton's tax returns to bolster Compton's testimony that he was gainfully employed, and he testified that he made a choice to introduce evidence of Compton's drug-dealing on direct examination to avoid having the jury hear it for the first time on cross-examination [Doc. 22-29 p. 13]. Trial counsel denied ever characterizing Compton's involvement with drug sales as his "criminal livelihood" [*Id*.].

Compton testified that trial counsel should have tested the victims for gunshot residue and faulted counsel for failing to raise the issue at trial or request testing [Doc. 22-28 p. 23]. Trial counsel stated he did not recall discussing testing the victims for gunshot residue [Doc. 22-29 p. 4]. Trial counsel claimed he considered obtaining the testing but knew that the medical examiner would testify that any gunshot residue found on the victims' clothing would have been consistent with the gunfire that killed them [*Id.*]. Therefore, trial counsel did not believe the results of the testing would have changed the outcome of the trial [*Id.*].

Compton said that he and trial counsel never discussed trial strategy [Doc. 22-28 p. 29]. He stated that trial counsel never attempted to prove that he acted in self-defense, and he agreed that he never told the police that one of the victims shot at him first [*Id.* at 29-30, 41]. Compton could not explain why the bullet he claimed was fired at him was found 30 inches above the floor in the wall where the victims fell when they were shot [*Id.* at 74-75].

Compton could not recall if he and trial counsel discussed available funds for expert witnesses [Doc. 22-28 p. 15-16]. Trial counsel said that he did not think a "gunshot expert" or crime scene expert was necessary in this case because Compton testified about his position and the victims' position at the time of the shooting [*Id.* at 102]. Trial counsel noted that there were five bullets found at the scene, four of which were associated with the victims [*Id.* at 102-03]. Trial counsel stated that he argued that the fifth bullet corroborated Compton's testimony that one of the victims fired first [*Id.*].

Following this evidentiary hearing, the post-conviction court denied relief [Doc. 22-27 p. 55-58]. On appeal, the TCCA affirmed the denial of post-conviction relief. *Compton v. State*, No. E2013-00373-CCA-R3-PC, 2013 WL 6001935, at *1 (Tenn. Crim. App. Nov. 12, 2013) ("*Compton III*").

On or about November 15, 2013, Compton filed the instant habeas petition, as later amended, raising the following grounds for relief, as paraphrased by the Court:

Ground1:    Counsel rendered ineffective assistance by:

    a.    Failing to seek an associate and experienced attorney to help in the case;

    b.    Failing to properly investigate the case, properly assert self-defense as an affirmative defense, and investigate alibi or corroborating witnesses;

    c.    Failing to investigate the crime scene to determine possible defenses;

    d.    Failing to retain an expert to reconstruct the crime scene, independently investigate the crime scene, locate other possible witnesses to the crime, or to interview any of the witnesses listed in the indictment;

    e.    Failing to vigorously cross-examine the State forensic experts or employ his own experts to determine if there was gunshot residence on the victims' hands or clothing;

    f.    Failing to properly advise Compton of the facts of the case or the State's evidence against him;

    g.    Never attempting to plea bargain for a reduced charge;

    h.    Failing to object to the prosecutor's continued reference to the victims as "boys;"

    i.    Failing to object to the prosecutor's frequent claims that the victims were shot at point blank range;

    j.    Failing to properly impeach and/or disqualify witness Charles Chandler;

    k.    Failing to cross-examine witnesses about the victim's gun;

    l.    Failing to object and/or cross-examine witnesses who said that a teenaged girl was placed in the vicinity of the shooting when it was the girl's mother who was in the vicinity of the shooting;

    m.    Failing to obtain an expert witness who could have testified that it is common practice for individuals participating in a drug sale to be armed;

    n.    Failing to question the State's expert witness about why a gunshot residue test was not performed on either victim; and

| o. | Failing to introduce Compton's most recent tax returns to show that he had a legitimate source of income. |

| Ground 2: | The trial court improperly enhanced Compton's sentence above the statutory maximum based on facts not found by the jury. |

| Ground 3: | The trial court improperly imposed consecutive sentences without making the appropriate findings of fact and based on judicially-found facts in violation of the Sixth Amendment. |

On March 26, 2014, Compton filed a motion to stay and abate his federal habeas proceedings because he had recently learned that his appellate counsel had submitted a motion for a late-filed application for permission to appeal the denial of post-conviction relief to the Tennessee Supreme Court, along with a motion in the TCCA seeking recall of that court's mandate [Doc. 11 p. 60]. On August 19, 2014, this Court stayed habeas proceedings in their entirety [Doc. 13 p. 72-73]. On February 6, 2014, the TCCA denied the motion to recall its mandate and motion to file a late-filed Rule 11 application [Doc. 14-3 p. 78]. On April 17, 2014, the Tennessee Supreme Court dismissed the application for permission to appeal [Doc. 14-1 p. 76]. On June 2, 2014, appellate counsel filed yet another motion for post-judgment relief that was denied by the Tennessee Supreme Court on June 10, 2014 [Doc. 14-2 p. 77].

On November 13, 2014, Respondent filed a status report indicating that Compton's State-court proceedings had been concluded [Doc. 14]. On October 22, 2018, this Court ordered Respondent to respond to Compton's petition [Doc. 16]. On January 18, 2019, Respondent filed its answer to the petition, thereby automatically lifting the stay previously imposed in these proceedings [Doc. 23; *see also* Doc. 16]. Compton did not file a reply to the response, and the deadline to do so has passed. *See* E.D. Tenn. LR7.1(a).

## II.    LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any

claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal

habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. *See id.* at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III.   DISCUSSION

### A.      Procedurally defaulted claims

Compton has presented numerous ineffective assistance of counsel claims — Ground 1.a; 1.c; and 1.f-m. — that were raised in his post-conviction petition to the Knox County Criminal

Court [*See, generally*, Doc. 22-27] but were not pursued in post-conviction appellate proceedings.[2] A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). Therefore, by failing to pursue these claims to the TCCA, Compton failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Compton has not argued that cause and prejudice exist to excuse the default.

The Court notes that, in some circumstances, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of an ineffective-assistance of trial counsel claim. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012). However, the holding in *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]" *Id.* at 16. Thus, *Martinez* does not apply to a claim of ineffective assistance of

---

[2] These claims argue that trial counsel was ineffective by: failing to seek an associate and experienced attorney to help in the case (Claim 1.a); failing to investigate the crime scene to determine possible defenses (Claim 1.c); failing to properly advise Petitioner of the facts of the case or the State's evidence against him (Claim 1.f); failing to attempt to plea bargain for a reduced charge (Claim 1.g); failing to object to the prosecutor's continued reference to the victims as "boys" (Claim 1.h); failing to object to the prosecutor's frequent claims that the victims were shot at point-blank range (Claim 1.i); failing to properly impeach and/or disqualify Charles Chandler as a witness (Claim 1.j); failing to cross-examine witnesses about the victim's gun (Claim 1.k); failing to object and/or cross-examine witnesses when a teenaged girl was placed in the vicinity of the shooting when, in fact, it was the girl's mother (Claim 1.l); and failing to obtain an expert witness who could have testified that it is common practice for individuals participating in a drug sale to be armed (Claim 1.m).

trial counsel raised in the initial-review collateral stages but defaulted on appeal. *See Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"); *West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (stating that *Martinez* does not apply to a claim the petitioner raised in the initial review post-conviction proceeding but failed to preserve on appeal). Therefore, Compton has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

## B.    Exhausted ineffective assistance of counsel claims[3]

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the

---

[3] Some of Compton's procedurally defaulted claims are partially subsumed by his exhausted claims. Regardless, the Court finds he is not entitled to relief for the reasons discussed *infra*.

product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### 1. Investigation of witnesses

Compton argues that trial counsel failed to adequately investigate witnesses, thereby failing to locate witnesses would could provide an alibi or otherwise corroborate his testimony [Docs. 1 p. 8; Doc. 7 p. 3-4]. The TCCA rejected this claim on appeal of the post-conviction court's denial of this claim. *Compton III*, 2013 WL 6001935, at *9

During the post-conviction hearing, trial counsel testified that he and his investigator "interviewed witnesses on the indictment and any witnesses that we got information from other sources about" [Doc. 22-28 p. 99]. Trial counsel attended most of these interviews personally, and he received memos detailed the interviews he did not attend [*Id.*]. Trial counsel received witness

statements from the State well in advance of trial, which allowed him to "map out" his cross-examination of witnesses [*Id*. at 100-01]. Trial counsel also stated that if Compton had told him about any witnesses who could have supported a self-defense theory, he would have investigated these witnesses [Doc. 22-29 p. 8-9]. Therefore, the record supports a determination that trial counsel and/or his investigator either interviewed all relevant witnesses brought to their attention, or they reviewed the available statements of these witnesses to prepare for cross-examination.

Moreover, Compton did not present at the post-conviction hearing any of the witnesses that trial counsel allegedly failed to investigate and call at trial. It is not unreasonable for a State court to decline to find attorney deficiency regarding the calling of witnesses when those witnesses were not presented to the State court. *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006) ("The conclusion of both the state trial court and the state court of appeals, that there was no proper evidence to support Petitioner's claim [regarding what the witness's testimony would have been if the witness testified], was not contrary to or an unreasonable application of clearly established law."). Since Compton has not offered evidence of how these witnesses would have testified, he has not established trial counsel was ineffective. Therefore, the Court finds that Compton has not demonstrated that the TCCA's decision rejecting this claim was contrary to or an unreasonable application of *Strickland*, and he is not entitled to relief on this claim.

### 2. Theory of self-defense

Compton next argues that trial counsel failed to properly raise and argue self-defense [Doc. 1 p. 8-9; Doc. 7 p. 4, 6-8]. The TCCA rejected this claim on appeal, noting trial counsel's testimony that he attempted to corroborate Compton's assertion of self-defense, and that the court instructed the jury as to the defense's theory. *Compton III*, 2013 WL 6001935, at *9. It otherwise opined that the medical examiner's testimony discredited the claim of self-defense, and the jury's verdict showed that it disbelieved Compton's account. *Id*.

At the post-conviction hearing, trial counsel testified that he and Compton discussed self-defense "a lot" and "prepared extensively" for Compton's testimony [Doc. 22-29 p. 36]. Trial counsel explained that there were five bullets fired, but only four were accounted for, so he tried to use the fifth bullet as evidence to corroborate Compton's testimony that the victims fired first [*Id*. at 36-37]. Compton testified at trial that when he followed the victims into the hallway, he heard a "pop" that sounded "like a gunshot," and he saw Hall turning toward him [Doc. 22-6 p. 89]. Compton stated that he saw a gun in the victim's hand, so he pulled out his own gun and fired [*Id*. at 90]. Trial counsel noted that Compton's testimony was "overall consistent with what other witnesses testified to" regarding the location of the shooting and how people were positioned [Doc. 22-29 p. 37].

The trial court found that self-defense had been fairly raised, and the court provided a jury instruction on self-defense [Doc. 22-7 p. 71-74]. Compton cannot establish constitutionally-ineffective assistance merely because his defense was unsuccessful. Therefore, the Court finds that Compton has not demonstrated that the TCCA's decision rejecting this claim was contrary to or an unreasonable application of *Strickland*, and he is not entitled to relief on this claim.

### 3. Characterization of Compton as a drug-dealer

Compton argues that trial counsel was ineffective by failing to refute the State's characterization of him as a drug dealer and by failing to introduce evidence of his tax returns to show that he had a legitimate source of income [Doc. 7 p. 4]. The TCCA rejected these arguments. *Compton III*, 2013 WL 6001935, at *10.

Trial counsel testified that he "made a decision that we had to acknowledge that [Compton] was a small-time drug dealer," because he "did not want to leave that for the jury to hear through cross-examination for the first time" [Doc. 22-29 p. 13]. Trial counsel stated that, to his

recollection, he never described Compton's drug dealing as "a criminal livelihood," and he noted that Compton had testified about his employment in various fast-food restaurants [*Id.*].

Counsel's testimony illustrates that he made a strategic decision to elicit testimony that Compton sold drugs, and such choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Notably, Compton did not introduce his income tax statements at the post-conviction hearing, so the State court was not presented with any evidence as to what the forms would have shown. Moreover, as the TCCA observed, the fact that Compton may have been employed does not disprove the fact that he was involved in a drug sale that led to the victims' deaths, and therefore, his tax forms would not have changed the outcome of the trial. *See Compton III*, 2013 WL 6001935, at *10. Accordingly, the Court finds that Compton has not demonstrated that the TCCA's decision rejecting this claim was contrary to or an unreasonable application of *Strickland*, and he is not entitled to relief on this claim.

### 4. Expert testimony on gunshot residue

Compton argues that trial counsel was ineffective in failing to obtain a forensic expert to testify about gunshot residue and the crime scene [Doc. 1 p. 8-9; Doc. 7 p. 5-8]. The TCCA disagreed, concluding Compton could not establish deficient performance because he did not present the testimony of a forensic expert during the post-conviction proceedings. *Compton III*, 2013 WL 6001935, at *10. The court reasoned that without knowing how an expert witness would have testified, it could not conclude that trial counsel was deficient. *Id.*

It is not unreasonable to conclude that that an attorney was not deficient regarding the calling of witnesses when those witnesses are not presented to the State court. *See, e.g., Stewart*, 468 F.3d at 353. Therefore, the Court finds that Compton has not demonstrated that the TCCA's

decision rejecting this claim was contrary to or an unreasonable application of *Strickland*, and he is not entitled to relief on this claim.

### C.    Sentencing

In his second ground for relief, Compton argues that the trial court violated his Sixth Amendment right to a jury trial when it sentenced him above the presumptive statutory sentence based solely on judicially-found facts [Doc. 1 p. 10-11]. On appeal, the TCCA concluded that Compton's sentences were not unconstitutional. *Compton II*, 2008 WL 4071825, at *5-6.

As the Court has already noted, the trial court imposed 25-year sentences for each conviction after finding the following enhancement factors applied: Compton had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; Compton had no hesitation about committing a crime when the risk to human life was high; Compton was released on probation at the time the offense was committed; and Compton had failed to comply with the conditions of a sentence involving release into the community [Doc. 22-19 p. 40-43]. *See also* Tenn. Code Ann. § 40-35-114 (2), (9), (11), (14).

The TCCA explained that, at the time Compton committed his offenses in 2003, the presumptive sentence for a Class A felony was the midpoint range absent any enhancement or mitigating factors.[4] *Compton II*, 2008 WL 4071825, at *5 (citing Tenn. Code Ann. § 40-35-210(c)). Compton's sentencing range, as a Range I offender convicted of a Class A felony, was 15 to 25 years, making the presumptive midpoint 20 years. *Id.* In this case, the trial court began each sentencing calculation at the minimum sentence (15 years) instead of the midpoint range (20

---

[4] In 2005, Tennessee amended its sentencing statute to make enhancement and mitigating factors advisory, rather than mandatory.

years), but such an error was deemed harmless, as the trial court began its analysis with a shorter sentence than Compton was entitled to and based the sentence on appropriate enhancements. *Id*. The court reasoned that because the record supported enhancing the sentences from 15 to 25 years, the record also would have supported an enhancement from 20 to 25 years. *Id*.

The TCCA also noted that Compton did not "challenge the application of any specific enhancement factor," arguing only generally that the trial court improperly enhanced the sentence based on judicially-found facts. *Id*. at *6. As a result, the court focused its analysis on the application of the enhancement factors that Compton had a previous history of criminal convictions and that he was released on probation when he committed the offense. *Id*.

The court noted that Compton had prior convictions for possession of a controlled substance and of drug paraphernalia, and he admitted at his first sentencing hearing that he was on probation when he committed the instant offenses. *Id*. The court concluded that the application of enhancement factors based on Compton's prior convictions and a fact admitted to by Compton did not violate his Sixth Amendment right to a jury trial. *Id*. The court further concluded that the application of these two enhancement factors was sufficient to justify the imposition of a 25-year sentence, remarking that the application of a single enhancement factor can justify an enhanced sentence. *Id*.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303 (emphasis omitted).

At Compton's sentencing hearing, the State introduced copies of his convictions for possession of a controlled substance and possession of drug paraphernalia [Doc. 22-20 p. 11-14]. Because *Apprendi* permits the enhancement of a sentence based on prior convictions, it was not unreasonable for the TCCA to conclude that the trial court properly applied this enhancement factor.

The record also supports the TCCA's conclusion that, during his first sentencing hearing, Compton admitted that he was on probation when he committed the offense. His counsel conceded that Compton had completed approximately ten months of his probationary period when he committed the instant offense, and he submitted a sentencing memo on behalf of Compton that documented Compton's criminal history and included a warrant for his violation of probation [*See, e.g.*, Doc. 22-8 p. 22; Doc. 22-1 p. 67-75, 123].

Statements from attorneys can constitute judicial admissions that are binding on a court. *See United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004) (opining that court had "discretion to consider a statement made in a brief to be a judicial admission, binding on both this court and the trial court"). An admission by counsel is also an admission for *Blakely* purposes that justifies an enhanced sentence. *Id.* (concluding that counsel's statements in appellate brief rose to level of "deliberate, clear[,] and unambiguous" so as to constitute an admission from the defendant that justified an enhanced sentence under *Blakely*).

At Compton's first sentencing hearing, trial counsel expressly conceded that Compton was on probation at the time that he committed the offense, and he indicated such again at Compton's second sentencing hearing [Doc. 22-8 p. 22; Doc. 22-19 p. 23]. His admissions rise to the level of deliberate, clear, and unambiguous. *Burns*, 109 F. App'x at 58 (quotation marks omitted). Therefore, it was not unreasonable for the TCCA to rely on these admissions to conclude that the trial court properly enhanced Compton's sentence.

Because applying prior convictions and facts admitted by a criminal defendant to enhance a sentence does not offend the right to a jury trial, Compton has not demonstrated that the rejection of this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent, and he is not entitled to relief on this claim.

### D.    Consecutive sentences

In his third and final ground for relief, Compton argues that the trial court did not make adequate findings justifying the imposition of consecutive sentences, and that the imposition of consecutive sentences was based on improper judicial fact-finding in violation of the Sixth Amendment [Doc. 1 p. 11, 12-14].

#### 1.    Trial court's findings

Compton's challenge to the trial court's findings regarding consecutive sentencing is based solely on the State court's alleged misapplication of State law.    Federal habeas corpus is not the proper avenue for challenging a State court's application of its own laws. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").    Therefore, this claim is not cognizable on federal habeas review.

#### 2.    Sixth Amendment

The TCCA rejected Compton's claim Tennessee's procedures regarding the imposition of consecutive sentencing violated his rights under the Sixth Amendment, because the decision to impose consecutive sentences was based on judicially-found facts.    *Compton II*, 2008 WL 4071825, at *8 (citing *State v. Allen*, 259 S.W.3d 671, 689-90 (Tenn. 2008)).

The Supreme Court has held that the Sixth Amendment does not prohibit States from assigning to judges, rather than to juries, the finding of facts necessary to the imposition of consecutive sentences for multiple offenses, expressly declining to extend the reasoning of *Apprendi* and *Blakely* to matters of consecutive sentencing. *Oregon v. Ice*, 555 U.S. 160, 167-68 (2009). Accordingly, Compton has not demonstrated that the rejection of this claim was contrary to or an unreasonable application of clearly established Supreme Court law, and relief on this claim is denied.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V.    CONCLUSION

Brandon Compton has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE** JUDGMENT ORDER **WILL ENTER.**

_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE